UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT INC., a Washington non-profit corporation; FRIENDS OF TOPPENISH CREEK, a Washington non-profit corporation; CENTER FOR FOOD SAFETY, a Washington, D.C. non-profit corporation; <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON DAIRY HOLDINGS LLC, a Washington limited liability company; WASHINGTON AGRI INVESTMENTS LLC, a Washington limited liability company; DBD WASHINGTON LLC, a Washington limited liability company; SMD LLC, a Washington limited liability company; <br><br> Defendants. | NO. 1:19-CV-3110-TOR <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF REPLY |

BEFORE THE COURT are Defendants' Motion to Dismiss (ECF No. 14) and Plaintiffs' Motion to Strike Portions of Defendants' Reply Memorandum (ECF No. 32). These matters were heard without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, the Court **GRANTS IN PART** Defendants' Motion to Dismiss (ECF No. 14) and **GRANTS** Plaintiffs' Motion to Strike Reply Memorandum (ECF No. 32).

## BACKGROUND

This case arises out of alleged improper manure management at two dairy facilities. The following facts are drawn from Plaintiffs' Complaint and construed in the light most favorable to Plaintiffs. *Schwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

Defendants Washington Dairy Holdings, LLC, Washington Agri Investments, LLC, and DBD Washington, LLC, own and operate the dairy previously known as DeRuyter Brothers Dairy ("DBD") in Outlook, Washington. ECF No. 1 at 5, ¶ 13. Defendant SMD, LLC, owns and operates the dairy previously known as Snipes Mountain Dairy ("SMD") in Outlook, Washington. *Id.* at ¶ 14. In 2018, Washington Dairy Holdings, LLC, Washington Agri Investments, LLC, and/or DBD Washington, LLC, purchased SMD, LLC. ECF No. 1 at 14, ¶ 41. Wayne Cummings is an owner and member of all four LLCs.

ECF No. 1 at 13-14, ¶¶ 39-40.  Mr. Cummings manages DBD and SMD.  ECF No. 1 at 14, ¶ 42.

Washington Dairy Holdings, LLC, owns approximately 175 acres of land, which DBD uses for its dairy operations, such as animal confinement and milking. ECF No. 1 at 14, ¶ 43.  Washington Agri Investments, LLC, owns approximately 748 acres of land, which DBD uses for its dairy operations, such as crop production and manure management.  *Id.* at ¶ 44.  SMD owns and/or controls 147 acres of land, which SMD and DBD use for dairy operations.  ECF No. 1 at 15, ¶ 45.

DBD and SMD are both large dairy Concentrated Animal Feeding Operations ("CAFOs") under federal and state law.  ECF No. 1 at 15, ¶ 46.  DBD produces approximately 54,020,062 gallons of liquid waste and 36,864 tons of solid waste annually.  ECF No. 1 at 16, ¶ 51.  SMD produces approximately 8,390,000 gallons of liquid waste and 17,619 tons of solid waste annually.  *Id.* DBD and SMD flush their alleys, free stall barns, and milking parlors of liquid manure and wastewater into collection pits, which is then piped into solids separators.  ECF No. 1 at 16, ¶ 52.  Solid manure, litter, and other waste is ultimately stored and/or composted at the dairies on permeable surfaces.  *Id.* at ¶ 53.  Liquid manure wastes are stored in manure storage lagoons until they are

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF REPLY ~ 3

applied to fields through various land application techniques, including dry spreaders, spreaders and sprinklers/irrigation. *Id.* at ¶ 54.

The manure storage lagoons are unlined or inadequately lined and do not have an appropriate leak detection system to prevent the downward migration and seepage of wastewater into groundwater. ECF No. 1 at 16, ¶ 55. The lagoons are constructed above an aquifer that serves as a domestic water supply. ECF No. 1 at 17, ¶ 57. The lagoons have seeped manure waste since they were brought into operation. *Id.* at ¶ 60. DBD and SMD also store manure waste on permeable surfaces, causing leachate from the solid manure to enter groundwater. ECF No. 1 at 18, ¶ 64. DBD and SMD also do not remove animal wastes from their animal confinement pens, which allows waste to accumulate within the pens and seep and/or leach through the soil and into the underlying aquifer. *Id.* at ¶ 66. The groundwater underlying the dairies exceeds federal and state water quality standards for nitrate levels. *Id.* at ¶ 61.

The dairies also apply liquid and solid manure wastes to nearby agricultural fields in amounts that exceed agronomic rates. ECF No. 1 at 19-20, ¶ 71. Soil tests submitted to the Washington State Department of Ecology show elevated nitrate and phosphorus levels in DBD's fields in 2017 and 2018 and elevated nitrate levels in SMD's fields in 2017. ECF No. 1 at 20-21, ¶¶ 73-76. Application of manure waste above agronomic rates cause manure nutrients, including nitrate

and phosphorus, to leach through the soil and into groundwater. ECF No. 1 at 22, ¶ 81. Once nitrates enter the water table, they migrate away from DBD and SMD's properties and into the wells of nearby residents. ECF No. 1 at 23, ¶ 88.

The dairies' manure management practices cause groundwater contamination beyond acceptable levels for nitrate. ECF No. 1 at 24, ¶ 92. The EPA has determined that nitrates pose an acute health concern at certain levels of exposure. *Id.* at ¶ 93. High levels of nitrate in water can cause methemoglobinemia, a blood disorder in infants that can be fatal if left untreated. ECF No. 1 at 25, ¶ 94. High nitrate levels may affect pregnant women and adults with hereditary cytochrome b5 reductase deficiency. *Id.* at ¶ 95. Nitrate ingestion in humans has been linked to goitrogenic actions on the thyroid gland, fatigue and reduced cognitive functioning due to chronic hypoxia, and maternal reproductive complications including spontaneous abortion. *Id.* at ¶ 97. Excessive nitrate ingestion is also suspected of causing various forms of cancer in the general exposed population. *Id.* at ¶ 98.

Water samples taken from residential wells surrounding the dairies show elevated levels of nitrate in the groundwater. ECF No. 1 at 26, ¶ 100. DBD and SMD's storage and application of manure has caused nitrate contamination of these residential wells, forcing Plaintiffs' members and other residents to either

consume unsafe drinking water or to obtain alternative sources of drinking water. *Id.* at ¶ 102.

Plaintiffs raise two claims against Defendants under the Resource Conservation and Recovery Act ("RCRA"): (1) Imminent and Substantial Endangerment to Public Health and/or the Environment; and (2) Illegal Open Dumping. ECF No. 1 at 26-31, ¶¶ 103-124.

## DISCUSSION

### A. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim "tests the legal sufficiency" of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF REPLY ~ 6

When analyzing whether a claim has been stated, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" however "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may also disregard conclusory allegations and arguments which are not supported by reasonable deductions and inferences. *Id.*

The Court "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*,

556 U.S. at 662. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (citation omitted). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro*, 250 F.3d at 732.

## B. Consideration of Supporting Exhibits

In support of their briefing on the pending motion to dismiss, both sides submitted substantial supporting exhibits. ECF Nos. 15, 24, 25, 26, 31. Defendants argue in a footnote that its supporting exhibits are subject to judicial notice. ECF No. 14 at 10, n.6. Plaintiffs develop no argument as to why the Court should consider their supporting exhibits at this stage in the proceedings. ECF No. 23.

"Review [of a motion to dismiss] is limited to the complaint." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "Generally, district courts may not consider material outside the pleadings when assessing" a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

However, in considering a motion to dismiss, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv.*, 540 F.3d at 1061 (*citing Tellabs*, 551 U.S. at 322). The Court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). This includes "records and reports of administrative bodies." *Ritchie*, 342 F.3d at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

While the Court has discretion to take notice of certain materials, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint." *Id.* at 1003.

### 1. Defendants' Supporting Exhibits

In support of their motion to dismiss, Defendants submit the following documents: (1) Concentrated Animal Feeding Operation National Pollutant Discharge Elimination System and State Waste Discharge General Permit, issued January 18, 2017; (2) Washington State Department of Ecology website record

listing "DBD WA LLC" as the active holder of DeRuyter Brothers Dairy's CAFO permit; (3) Washington State Department of Ecology website record listing "SMD LLC" as the active holder of Snipes Mountain Dairy Inc.'s CAFO permit; (4) a June 21, 2017 letter from the Washington State Department of Ecology to Mike Benjamin of DBD Washington, LLC, regarding a transfer of coverage under the CAFO NPDES and State Waste Discharge General Permit; (5) a March 8, 2018 letter from the Washington State Department of Ecology to Lynne Geddis of DBD Washington, LLC, regarding a transfer of coverage under the CAFO NPDES and State Waste Discharge General Permit; and (6) Washington Pollution Control Hearings Board ("PCHB") Findings of Fact and Conclusions of Law and Order, *Washington State Dairy Federation et al v. State of Washington, Department of Ecology*, PCHB No. 17-016c, 2018 WL 5725026 (Oct. 25, 2018).

Defendants appear to offer the Ecology website records and letters for the Court to take judicial notice of the specific fact of which LLCs hold CAFO permits. It is not clear that the Ecology letters are matters of public record, but the Ecology website records are readily accessible by the public via the agency's website. Accordingly, the fact of which LLCs actively hold CAFO permits is subject to judicial notice.

Defendants do not identify "discrete facts" of which they seek the Court's notice in the other supporting documents, so the Court construes these exhibits as a

request for notice of "a number of whole documents." *See Crawford v.*

*Countrywide Home Loans, Inc.*, 647 F.3d 642, 649-50 (7th Cir. 2011). Defendants

appear to offer the CAFO permit and the PCHB Order to establish a series of facts

about the rights and obligations Defendants have under the permit. Even if the

CAFO permit and the PCHB Order are matters of public record, Defendants fail to

identify which specific facts in these documents they request the Court notice.

Furthermore, these documents appear to be offered generally to challenge

Plaintiffs' factual allegations. Defendants' use of supporting exhibits seeks to

establish defenses rather than identify legal insufficiencies in the Complaint on its

face. Consideration of these documents as a whole would take the Court's

evaluation of the motion to dismiss away from the face of the Complaint.

*Cervantes*, 5 F.3d at 1274. Additionally, taking judicial notice of disputed facts

would conflict with the Court's obligation at this stage to construe Plaintiffs'

factual allegations in the light most favorable to Plaintiffs. *Lee*, 250 F.3d at 688.

Accordingly, the Court declines to take judicial notice of these supporting exhibits

at this stage in the proceedings.

  2. *Plaintiffs' Supporting Exhibits*

  In opposition to Defendants' motion to dismiss, Plaintiffs submit for the

Court's consideration: (1) "Fact Sheet for the Concentrated Animal Feeding

Operation National Pollutant Discharge Elimination System and State Waste

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS
AND GRANTING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF
REPLY ~ 11

Discharge General Permit, and Concentrated Animal Feeding Operation State Waste Discharge General Permit," dated June 15, 2016;[1] (2) declaration of Helen Reddout, a member of Plaintiffs CARE and Center for Food Safety; and (3) declaration of Jean Mendoza, a member of Plaintiff Friends of Toppenish Creek. Because these documents are offered to respond to Defendants' disputed factual allegations, they are similarly not subject to judicial notice. *See Lee*, 250 F.3d at 690 (the court may not take judicial notice of disputed facts). Additionally, Plaintiffs specifically offer the two declarations to establish standing, which was not raised in Defendants' motion to dismiss. *See* ECF No. 23 at 7, n.1. Accordingly, the Court declines to take judicial notice of Plaintiffs' supporting exhibits at this time.

**C. Owner LLC Liability**

Defendants move to dismiss Plaintiffs' claims against Washington Dairy Holdings, LLC, and Washington Agri Investments, LLC, on the grounds that Plaintiffs fail to state a claim against those specific defendants. ECF No. 14 at 20-26.

---

[1]    Defendants also submit the same document in support of their reply memorandum. ECF Nos. 30, 31.

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF REPLY ~ 12

A private party may bring suit under RCRA "against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has *contributed or who is contributing* to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present any imminent and substantial endangerment to health or the environment."[2] 42 U.S.C. § 6972(a)(1)(B) (emphasis added). "[T]o state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous [or solid] waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011).

The Complaint alleges Washington Dairy Holdings, LLC, and Washington Agri Investments, LLC, commenced operations on September 1, 2016 and are owned and operated by Austin "Jack" DeCoster. ECF No. 1 at 13-14, ¶ 39.

---

[2] RCRA defines the term "person" as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body and shall include each department, agency, and instrumentality of the United States." 42 U.S.C. § 6903(15).

1 Wayne Cummings is an owner and member of both LLCs.  ECF No. 1 at 14, ¶ 40.

2 Along with DBD Washington, LLC, these LLCs own and operate the dairy

3 previously known as DeRuyter Brothers Dairy.  ECF No. 1 at 5, ¶ 13.  Washington

4 Dairy Holdings, LLC, Washington Agri Investments, LLC, and/or DBD

5 Washington, LLC, purchased SMD, LLC, in 2018.  ECF No. 1 at 14, ¶ 41.  SMD,

6 LLC, owns and operates the dairy previously known as Snipes Mountain Dairy.

7 ECF No. 1 at 5, ¶ 14.  Washington Dairy Holdings, LLC, owns approximately 175

8 acres of land that DBD uses for its dairy operations.  ECF No. 1 at 14, ¶ 43.

9 Washington Agri Investments, LLC, owns approximately 748 acres of land that

10 DBD uses for its dairy operations.  *Id.* at ¶ 44.

11     Plaintiffs have alleged facts to demonstrate that Washington Dairy Holdings,

12 LLC, and Washington Agri Investments, LLC, own the dairies whose manure

13 handling practices are at issue in this case.  Plaintiffs have also alleged facts to

14 demonstrate that Washington Dairy Holdings, LLC, and Washington Agri

15 Investments, LLC, own land on which the dairies engage in dairy operations and

16 have common ownership.  However, Plaintiffs have alleged no facts to indicate

17 how these two LLCs are liable for "contributing" to the dairies' manure

18 management.  The Complaint does not allege any facts to indicate whether or how

19 either of these LLCs had "a measure of control over the waste at the time of its

20 disposal or [were] otherwise actively involved in the waste disposal process."

*Hinds*, 654 F.3d at 852; *see Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1229-30 (E.D. Wash. 2015) (finding RCRA liability for passive landowner entities where evidence demonstrated interconnected relationship between the entities and common decision-making authority).  Because Plaintiffs have failed to allege facts to indicate Washington Dairy Holdings, LLC, and Washington Agri Investments, LLC, "contribute" to the dairies' manure management, Plaintiffs have failed to state a claim against these two defendants.  Accordingly, Defendants' motion to dismiss Washington Dairy Holdings, LLC, and Washington Agri Investments, LLC, as defendants in this matter is GRANTED.  Plaintiffs may have leave to amend the Complaint as justice requires.  Fed. R. Civ. P. 15(a)(2).

**D. Anti-Duplication Provision**

Defendants seek to dismiss Plaintiffs' Complaint on the grounds that the relief Plaintiffs seek would violate RCRA's anti-duplication provision.  ECF No. 14 at 17-20.

RCRA's anti-duplication provision prohibits RCRA's application to "any activity or substance which is subject to the Federal Water Pollution Control Act [including the Clean Water Act], the Safe Drinking Water Act, the Marine Protection, Research, and Sanctuaries Act of 1972, or the Atomic Energy Act of 1954, except to the extent that such application (or regulation) is not inconsistent

with the requirements of such Acts." 42 U.S.C. § 6905(a). In considering RCRA's interaction with the Clean Water Act, the Ninth Circuit has found that the anti-duplication provision "does not bar RCRA's application unless requirements under RCRA and the CWA are '[m]utually repugnant or contradictory,' such that the application of 'one implies the abrogation or abandonment of the other.'" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1095 (9th Cir. 2017) (quoting Black's Law Dictionary 907 (4th ed. Rev. 1968)). Therefore, "RCRA's anti-duplication provision does not bar RCRA's application unless that application contradicts a specific mandate imposed under the CWA …." *Id.* Anti-duplication is not triggered by "the current *absence* of a permit requirement and compliance with RCRA as enforced through a citizen suit." *Id.* at 1098 (emphasis in original).

Defendants argue that the relief Plaintiffs seek is inconsistent with the terms of Defendants' CAFO permits, therefore triggering RCRA's anti-duplication provision. ECF No. 14 at 17-20. Specifically, Defendants contend that their CAFO permits establish certain standards for manure storage and disposal or land application, and that Plaintiffs' requested relief exceeds those expectations. *Id.* at 18.

As an initial matter, it is not clear that requested relief that could *exceed* the CAFO permit standards would necessarily be *inconsistent* with the CAFO

standards. It is possible that RCRA imposes more stringent standards on Defendants without contradicting the CAFO permit standards to which Defendants are already subject. More importantly at this stage in the proceedings, though, is that Defendants' anti-duplication argument requires significant consideration of facts outside of the complaint. As discussed *supra*, the Court's review of a motion to dismiss "is limited to the complaint." *Cervantes*, 5 F.3d at 1274. To fully consider Defendants' anti-duplication argument, the Court would have to consider factual evidence about Defendants' current CAFO permit requirements, the specific conditions Plaintiffs request as injunctive relief, and whether the latter conflicts with the former. This kind of factual inquiry goes well beyond the allegations contained in Plaintiffs' Complaint and is therefore not grounds for a Rule 12(b)(6) motion. Defendants' motion to dismiss on anti-duplication grounds is DENIED. Defendants may have leave to renew this argument at a later stage in the proceedings, such as in a motion for summary judgment.

**E. "Solid Waste" Definitional Exclusion**

Defendants seek to dismiss Plaintiffs' Complaint on the grounds that Defendants are not subject to RCRA liability based on RCRA's definition of "solid waste." ECF No. 14 at 14-17.

A citizen RCRA suit may be brought "against any person . . . including any past or present generator, past or present transporter, or past or present owner or

operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present any imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). "The term 'solid waste' means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to [national pollutant discharge elimination system (NPDES)] permits under section 1342 of [the Clean Water Act]." 42 U.S.C. § 6903.

The NPDES system under the Clean Water Act permits the discharge of pollutants into navigable waters. 33 U.S.C. § 1342. The Clean Water Act defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, *concentrated animal feeding operation*, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362 (emphasis added). The definition of a point source under the Clean Water Act "is

to be broadly interpreted." *Cmty. Ass'n for Restoration of the Env't v. Henry*

*Bosma Dairy*, 305 F.3d 943, 955 (9th Cir. 2002) (quoting *Dague v. City of*

*Burlington*, 935 F.2d 1343, 1354 (2d Cir. 1991)).

The parties do not dispute that Defendants' dairies are a concentrated animal

feeding operation. ECF No. 14 at 15; ECF No. 23 at 8. The parties also agree that

CAFOs are "point sources" under the Clean Water Act. *Id.* However, the parties

disagree about how RCRA excludes CAFOs from liability. Defendants argue that

because their CAFOs are subject to NPDES permits under the Clean Water Act,

they are categorically excluded from RCRA liability. ECF No. 14 at 15-17.

Plaintiffs respond that Defendants' NPDES permits may permit discharges to

surface water, but Defendants' discharges to groundwater are not within the scope

of an NPDES permit and therefore subject to RCRA liability. ECF No. 23 at 8-11.

"'A primary canon of statutory interpretation is that the plain language of a

statute should be enforced according to its terms, in light of its context.'" *Wadler*

*v. Bio-Rad Laboratories, Inc.*, 916 F.3d 1176, 1186 (9th Cir. 2019) (quoting

*ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015)).

RCRA excludes from the definition of solid waste "solid or dissolved material in

… industrial discharges which are point sources" under the Clean Water Act. 42

U.S.C. § 6903(27). The term "point source" is not defined within RCRA. 42

U.S.C. § 6903. Under the Clean Water Act, "'point source' means any discernible,

confined and discrete conveyance, including but not limited to any … concentrated

animal feeding operation … from which pollutants are or may be discharged." 33

U.S.C. § 1362(14).  Because the Clean Water Act's definition of "point source"

focuses the inquiry on specific "confined and discrete" conveyances of pollutants,

it follows that RCRA's exclusion of "solid or dissolved material in … industrial

discharges which are point sources" is similarly defined by specific "confined and

discrete" permitted conveyances.  Since NPDES authorizes discharges to surface

water but not to groundwater, the alleged groundwater discharges at issue in this

case are not necessarily excluded from RCRA liability.

     This interpretation is consistent with other holdings in this circuit.  *See*

*Humboldt Baykeeper v. Union Pac. Ry. Co.*, No. C 06-02560 JSW, 2006 WL

3411877, at *6 (N.D. Cal. Nov. 27, 2006) (denying motion to dismiss RCRA claim

where complaint alleged discharge of pollutants into the ground, contaminating

soil and groundwater, which were not discharges regulated by the Clean Water

Act).  Defendants rely on two cases from this circuit in support of their position;

however, these cases are similarly consistent with this Court's interpretation.  ECF

No. 14 at 15-17.  In *Henry Bosma Dairy*, the Ninth Circuit found that dairy fields

where manure was stored were part of the CAFO and therefore point sources under

the Clean Water Act.  *Henry Bosma Dairy*, 305 F.3d at 955-56.  However, the

context of the Court's analysis is specific to discharges to navigable surface waters,

not groundwater.  *Id.*  Similarly, in *Coldani*, the District Court found the dairy's discharges of animal waste from a CAFO into navigable waters was excluded from RCRA's definition of "solid waste."  *Coldani v. Hamm*, No. Civ.S-07-660 RRB EFB, 2007 WL 2345016, at *10 (E.D. Cal. Aug. 16, 2007).  This case similarly did not deal with discharges to groundwater.  *Id.*

A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  In considering a motion to dismiss, a plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff."  *Stac Elecs.*, 89 F.3d at 1403 (citation and brackets omitted).  Plaintiffs' Complaint does not allege discharges of manure into navigable waters; rather, the Complaint alleges discharges into the ground and groundwater.  ECF No. 1 at 19-26, ¶¶ 71-102.  Because these discharges are not authorized by Defendants' NPDES permits, which authorize discharges into surface waters, they are not excluded from RCRA's definition of solid waste.  42 U.S.C. § 6903(27).  Accordingly, Defendants' motion to dismiss on these grounds is DENIED.

## F.  Motion to Strike Reply

Plaintiffs move to strike portions of Defendants' Reply Memorandum in Support of their Motion to Dismiss, on the grounds that the Reply raises arguments not raised in the opening brief.  ECF No. 32.

"It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990)). However, new arguments in a reply brief may be considered where they are a "reasonable response" to points made in an answering brief. *Am. Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1106 n.14 (9th Cir. 2003).

In their reply brief, Defendants argue for the first time that Plaintiffs' Complaint is a collateral attack on Washington's CAFO permitting scheme, and therefore precluded by the *Burford* abstention doctrine. ECF No. 30 at 9-12; *see generally Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Defendants argue that this is a reasonable response to Plaintiffs' responsive brief (ECF No. 23), which Defendants characterize as raising a collateral attack against Washington's state regulations governing groundwater discharge. ECF No. 36 at 2-4.

The Court does not read Plaintiffs' responsive brief so broadly. Plaintiffs' responsive brief does not challenge the validity of the state groundwater discharge regulations, but instead notes that state law rather than federal law governs groundwater discharges, and that state law does not trigger RCRA's anti-duplication provision. ECF No. 23 at 11-14. Defendant's characterization of this argument as a collateral attack on the state's regulatory scheme is not a reasonable

response to Plaintiffs' responsive brief. *Am. Civil Liberties Union of Nevada*, 333 F.3d at 1106 n.14. Accordingly, the Court declines to consider Defendants' *Burford* abstention argument. Plaintiffs' motion to strike portions of Defendants' Reply specific to the *Burford* abstention argument is GRANTED. Defendants may have leave to renew the substantive *Burford* argument at a later stage in the proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Strike Portions of Reply (**ECF No. 32**) is **GRANTED**.

2. Defendants' Motion to Dismiss (**ECF No. 14**) is **GRANTED IN PART**.

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **TERMINATE** Defendants Washington Dairy Holdings, LLC, and Washington Agri Investments, LLC, from the docket.

**DATED** October 24, 2019.

THOMAS O. RICE
Chief United States District Judge