1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   COMMUNITY ASSOCIATION FOR
    RESTORATION OF THE                      NO. 1:19-CV-3110-TOR
8   ENVIRONMENT INC., a
    Washington non-profit corporation;      ORDER DENYING DEFENDANTS'
9   FRIENDS OF TOPPENISH CREEK,             MOTIONS TO DISMISS (ECF Nos.
    a Washington non-profit corporation;    110, 111, 112), GRANTING IN PART
10  CENTER FOR FOOD SAFETY, a               PLAINTIFFS' MOTION TO UNSEAL
    Washington, D.C. non-profit             DOCUMENTS, AND DENYING AS
11  corporation;                            MOOT PLAINTIFFS' MOTION TO
                                            EXPEDITE
12                         Plaintiffs,

13         v.

14  AUSTIN JACK DECOSTER, an
    individual, DECOSTER
15  ENTERPRISES, LLC, a Delaware
    limited liability company,
16  AGRICULTURAL INVESTMENT-
    FUND II, LLC, a Delaware limited
17  liability company, IDAHO AGRI
    INVESTMENTS, LLC, an Idaho
18  limited liability company, IDAHO
    DAIRY HOLDINGS, LLC, an Idaho
19  limited liability company, DRY
    CREEK DAIRIES, LLC, an Idaho
20  limited liability company,
    WASHINGTON AGRI

INVESTMENTS, LLC, a
Washington limited liability
company, WASHINGTON DAIRY
HOLDINGS, LLC, a Washington
limited liability company, DBD
WASHINGTON, LLC, a Washington
limited liability company; and SMD
LLC, a Washington limited liability
company;

Defendants.

BEFORE THE COURT are Defendants' Motions to Dismiss (ECF Nos. 110, 111, 112) and Plaintiffs' Expedited Motion to Unseal Documents (ECF Nos. 117, 119). These matters were submitted with telephonic oral argument on February 3, 2022. Charles M. Tebbutt argued on behalf of Plaintiffs. Christopher A. Eiswerth and Lawson E. Fite argued on behalf of Defendants. The Court has reviewed the record and files herein, considered the parties' oral arguments, and is fully informed. For the reasons discussed below, Defendants' Motions to Dismiss (ECF Nos. 110, 111, 112) are **DENIED** and Plaintiffs' Expedited Motion to Unseal Documents (ECF Nos. 117, 119) is **GRANTED in part**.

//

//

//

//

# BACKGROUND

This case arises out of alleged improper manure management at two dairy facilities known as SMD and DBD.  A detailed factual background of the matter can be found in the Court's Order Granting in Part Defendants' Motion to Dismiss and Granting Plaintiffs' Motion to Strike Portions of Reply.  ECF No. 40.  Any new and relevant facts herein are drawn from  Plaintiffs' First Amended Complaint and construed in the light most favorable to Plaintiffs.  *Schwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

Plaintiffs raise two claims against Defendants under the Resource Conservation and Recovery Act ("RCRA"): (1) Imminent and Substantial Endangerment to Public Health and/or the Environment; and (2) Illegal Open Dumping.  ECF No. 102 at 35–39, ¶¶ 129–148.  For the purposes of the present motions, Plaintiffs essentially argue Defendant Austin "Jack" DeCoster is the founder, owner, and principal decision-maker of a network of limited liability companies that he uses to operate and manage the two dairy facilities at issue.  *See generally* ECF No. 102.  Plaintiffs' initial Complaint was dismissed in part based on a finding that Plaintiffs failed to allege all the named defendants exerted sufficient control over the dairies' manure management to trigger liability under the statute and regulations.  ECF No. 40 at 14.  Plaintiffs filed a First Amended Complaint, adding several new defendants but alleging the same causes of action

premised on essentially the same theories.  ECF No. 102.

Defendants collectively seek dismissal of all or part of the First Amended Complaint.  Washington Defendants[1] seek dismissal of Plaintiffs' "open dumping" claim on the grounds that Plaintiffs failed to provide adequate notice under the applicable statute.  ECF No. 110.  Defendants Washington Agri-Investments, LLC and Washington Dairy Holdings, LLC seek dismissal of the First Amended Complaint in its entirety on the grounds that Plaintiffs fail to allege these defendants exert sufficient control over the manure management to constitute "contributing" sources under the regulations.  ECF Nos.  111.  Non-Washington Defendants[2] move to dismiss on the grounds that the Court lacks personal jurisdiction.   ECF No. 112.   Non-Washington Defendants also join the other defendants in their theories of dismissal.

Additionally, Plaintiffs filed an Expedited Motion to Unseal Documents premised on Plaintiffs' need to reference certain sealed documents and the

---

[1]    Washington Agri Investments, LLC, Washington Dairy Holdings, LLC, DBD Washington, LLC, and SMD, LLC.

[2]    Austin "Jack" DeCoster, DeCoster Enterprises, LLC, Agricultural Investment Fund II, LLC, Idaho Agri Investment, LLC, Idaho Dairy Holdings, LLC, and Dry Creek Dairies, LLC.

information contained therein during oral argument.  ECF Nos. 117, 119.

## DISCUSSION

### II.    Motion to Unseal

Plaintiffs move the Court to unseal their Response to Non-Washington Defendants' Motion to Dismiss (ECF No. 115) and the documents filed in support of the motion (ECF Nos. 116-1, 116-2, 116-3).  ECF No. 117.  Plaintiffs argue they will need to refer to the information contained in the documents during oral argument and there are no compelling reasons to keep the documents sealed when they are offered in response to a dispositive motion.  *Id*.  Non-Washington Defendants oppose unsealing the documents at issue on the grounds that certain information contained in those documents is sensitive personal and financial information that is not disclosed to the public and is not relevant to the present motions.  ECF No. 131.  Washington Defendants also oppose unsealing the documents at issue, claiming the documents contain confidential business information.  ECF No. 132.

To maintain the sealed status of records related to dispositive motions, a party must show that "compelling reasons" exist to maintain the secrecy of the records.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point. " *Id*. at 1178 (quoting *Foltz v.*

1   *State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  "[T]he

2   strong presumption of access to judicial records applies fully to dispositive

3   pleadings, including motions for summary judgment and related attachments."  *Id*.

4   at 1179 ("[R]esolution of a dispute on the merits . . . is at the heart of the interest in

5   ensuring the public's understanding of the judicial process and of significant public

6   events.") (internal quotation marks and citation omitted).  "The 'compelling

7   reasons' standard is invoked even if the dispositive motion, or its attachments,

8   were previously filed under seal or protective order."  *Id*. (citation omitted).

9        On the other hand, a "good cause" showing will suffice to seal documents

10   produced in discovery.  *Id*. at 1180.  "[This] less exacting 'good cause' standard

11   applies to private materials unearthed during discovery, and to previously sealed

12   discovery attached to a nondispositive motion."  *Oliner v. Kontrabecki*, 745 F.3d

13   1024, 1026 (9th Cir. 2014) (internal quotation marks and citation omitted).  As the

14   Ninth Circuit has explained, "the public has less of a need for access to [these court

15   records] because [they] are often unrelated, or only tangentially related, to the

16   underlying cause of action."  *Id*. (quoting *Kamakana*, 447 F.3d at 1179).

17        Having reviewed the parties' briefings, the documents at issue, and the

18   parties' representations at oral argument, the Court finds it appropriate to maintain

19   the confidentiality of the documents filed in support of Plaintiffs' responsive

20   briefing.  The documents filed under ECF Nos. 116-1, 116-2, and 116-3 shall

1   remain under seal.  However, the Court finds unsealing Plaintiffs' responsive

2   briefing at ECF No. 115 will not reveal any of the confidential information of

3   which Defendants are concerned and would assist in more fully developing the

4   record.  Additionally, the Court finds Plaintiffs can effectively convey their oral

5   arguments without reference to the specific details contained in the documents.

6   Washington and Non-Washington Defendants concede unsealing ECF No. 115

7   will not disclose any information they wish to keep confidential.  Accordingly, the

8   Court grants Plaintiffs' Motion to Unseal (ECF No. 117) in part and denies as moot

9   Plaintiffs' Motion to Expedite (ECF No. 119).

10  ### III.   Motion to Dismiss—Personal Jurisdiction

11       A motion to dismiss for lack of personal jurisdiction is governed by Federal

12  Rule of Civil Procedure 12(b)(2).  In response to a motion to dismiss based on lack

13  of personal jurisdiction, the plaintiff bears the burden of establishing that

14  jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

15  A court will accept as true the uncontroverted allegations in the complaint.

16  *Menken v. Emm*, 503 F.3d 797, 800 (9th Cir. 2004).  However, if a jurisdictional

17  fact is disputed, a plaintiff must come forward with additional evidence.  *Mavrix*

18  *Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011).  Thus,

19  parties may submit, and a court may consider, declarations and other evidence

20  outside the pleadings.  *Kellman v. Whole Foods Mkt., Inc*., 313 F. Supp. 3d 1031,

1042 (N.D. Cal. 2018). Conflicts in the evidence must be resolved in the

plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800

(9th Cir. 2004). Where a motion is based on written materials rather than an

evidentiary hearing, a plaintiff need only make a prima facie showing of

jurisdictional facts. *Id*.

### A. Specific Personal Jurisdiction

Personal jurisdiction refers to a court's power to render a valid and

enforceable judgment against a particular defendant. *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *S.E.C. v. Ross*, 504 F.3d 1130, 1138

(9th Cir. 2007). Personal jurisdiction in federal courts is determined by the law of

the state in which it sits. *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015).

"Washington's long-arm statute extends the court's personal jurisdiction to the

broadest reach that the United States Constitution permits." *Microsoft Corp. v.*

*Commc'ns & Data Sys. Consultants, Inc.*, 127 F. Supp. 3d 1107, 1113 (W.D.

Wash. 2015) (citing *Byron Nelson Co. v. Orchard Management Corp*., 95 Wash.

App. 462, 465 (1999)). Therefore, "the jurisdictional analysis under state law and

federal due process are the same." *Id*.

Under the Due Process Clause, a court may exercise personal jurisdiction

over a defendant only where "the defendant ha[s] certain minimum contacts with

the forum state such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).  Personal jurisdiction may arise as general or specific.  Here, Plaintiffs do not allege the Court has general personal jurisdiction over the Non-Washington Defendants.  Thus, the Court's analysis will focus only on whether the Court has specific personal jurisdiction.

Specific personal jurisdiction may only be exercised "when a case aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id*. at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The Court must utilize the following three-prong test to determine whether specific jurisdiction has been established:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (quotation and citations omitted).  The plaintiff bears the burden on the first two prongs of the test.  *CollegeSource*, *Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If the plaintiff succeeds in satisfying the first two prongs, the

1    burden then shifts to the defendant "to set forth a 'compelling case' that the

2    exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp.*

3    *v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).  Here, the parties only dispute the

4    first prong of the analysis; their briefing does not address the remaining two

5    prongs.

6                    *1.  Purposeful Availment*

7           Non-Washington Defendants seek dismissal on the grounds that Plaintiffs

8    have not alleged that these defendants directed any activities toward Washington

9    State that relate to the claims asserted in this case.  ECF No. 112 at 11.  Plaintiffs

10   allege Defendant DeCoster directs and oversees all activities relating to the dairies'

11   operations and that he uses an LLC ownership scheme as an instrumentality to

12   conduct his business.  ECF No. 115 at 9–22.

13          In determining whether a defendant has purposely availed itself to a

14   particular state, courts either apply the "purposeful availment" analysis or the

15   "purposeful direction" analysis.  *Schwarzenegger*, 374 F. 3d at 802.  Purposeful

16   availment is generally applied in contract cases, whereas purposeful direction is

17   applied in tort cases.  *Id.*  There are no contract claims in dispute here; thus,

18   purposeful direction is the applicable analysis.  Purposeful direction may be

19   demonstrated by evidence showing (1) the defendant purposefully directed its

20   actions (2) at the forum state and (3) those actions caused harm the defendant knew

1   was likely to be suffered in the forum state.  *Id.*; *see also Calder v. Jones*, 465 U.S.

2   783 (1984).

3          Plaintiffs' First Amended Complaint describes in detail the ownership

4   scheme of the diaries, which involves multiple levels of interconnected limited

5   liability companies.  ECF No. 102 at 17, ¶ 44.  The levels are comprised of the

6   dairies at issue (DBD Washington, LLC and SMD, LLC), two Washington LLCs

7   (Washington Agri Investments, LLC and Washington Dairy Holdings, LLC), and

8   several out-of-state LLCs (Idaho Agri Investments, LLC, Idaho Dairy Holdings,

9   LLC, Dry Creek Dairies, LLC, Agricultural Investment Fund II, LLC, and

10  DeCoster Enterprises, LLC).  *Id.*  The LLCs form a hierarchy of sorts, with

11  Defendant DeCoster at the top of the scheme, and investments and organizational

12  membership flowing down through the various entities.  *Id.*

13         For example, Defendant DeCoster, individually and as a trustee of DeCoster

14  Revocable Trust, is the manager and only member at DeCoster Enterprises.  *Id.* at

15  16, ¶ 42; *see also* ECF No. 116-3 at 63, at 73.  DeCoster Enterprises is the sole

16  investor in Agricultural Investment Fund II, which is the sole member of Idaho

17  Agri Investments.  ECF No. 102 at 17, ¶ 42.  Idaho Agri Investments is the sole

18  member of Washington Agri Investments, which is the governor and sole member

19  of SMD.  *Id.* at ¶ 44.  Washington Agri Investments receives its funding from

20  DeCoster Enterprises.  *Id.*  A similar interconnected line of investment and

1   membership can be traced from DBD up to DeCoster Enterprises and Defendant

2   DeCoster.  *Id.* at 17, ¶ 44.  Plaintiffs allege Defendant DeCoster uses the LLC

3   ownership scheme to carry out all dairy operations and business.  *Id.*

4        Plaintiff asserts specific personal jurisdiction exists as to Defendants

5   DeCoster and DeCoster Enterprises because Defendant DeCoster purposely

6   directed his actions toward Washington.  ECF No. 115 at 8–13.  Defendant

7   DeCoster entered and executed real estate contracts to purchase the Washington

8   dairies at issue; he oversees and authorizes financial transfers and expenditures for

9   the dairies' operations; he hires or appoints individuals to manage the dairies; he

10  oversees manure equipment repairs and servicing needs; he oversees activities

11  related to state and regulatory compliance; and he directs the purchase and sale of

12  cattle and feed.  ECF No. 115 at 8–13.

13       Plaintiffs' analysis is largely silent regarding the remaining Non-Washington

14  Defendants.  However, Plaintiffs offer an alternative theory as to these defendants'

15  contacts with Washington state, which is premised on the theory of corporate alter

16  ego.  ECF No. 115 at 14.  This theory allows a court to impute the contacts of a

17  local subsidiary to its foreign parent company for the purposes of establishing

18  specific personal jurisdiction.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir.

19  2015).  For the alter ego theory to apply, a plaintiff must make a prima facie

20  showing "(1) that there is such unity of interest and ownership that the separate

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS, ETC. ~ 12

1   personalities of the two entities no longer exist and (2) that failure to disregard

2   their separate identities would result in fraud or injustice." *Id*. at 1073 (citation and

3   internal brackets omitted).

4        The first prong requires a showing that the parent company asserts such

5   control over the subsidiary that the subsidiary is merely an instrumentality of the

6   parent. *Id*. The control must be pervasive, such as "when a parent corporation

7   dictates every facet of the subsidiary's business—from broad policy decisions to

8   routine matters of day-to-day operation." *Id*. Total ownership and shared

9   management personnel is insufficient. *Id*. To illustrate, courts have imputed local

10  contacts where the subsidiaries are undercapitalized, the two entities fail to keep

11  adequate accounting records, and the parent company freely transfers the

12  subsidiaries' assets. *Id*. at 1074. Conversely, courts have refused to impute

13  contacts where the entities leased separate facilities, maintained separate

14  accounting books and records, the subsidiary entered contracts on its own, the

15  subsidiary paid its own taxes, and each entity had its own board of directors. *Id*.

16       Here, Plaintiffs allege the accounting records for all the LLCs were

17  comingled. ECF No 115 at 19. To support this assertion, Plaintiff submitted an

18  asset/liability balance sheet attributable to some or all Defendants. ECF No. 116-3

19  at 49. There are four columns that appear to identify various business entities,

20  including some or all Defendants in this matter. One column is titled "DeCoster

Enterprises Core Companies" and another column is titled "Dairy Companies." *Id.* It is unclear which entities make up the "Dairy Companies," or if any of those companies are the named defendants in this matter, but if "Dairy Companies" refers to the dairy LLC ownership scheme at issue here, such evidence indicates that the entities may not keep separate accounting records, which weighs in favor of applying the alter ego theory.

Plaintiffs also allege Defendant DeCoster freely transferred assets among all the subsidiaries, which often left the LLCs undercapitalized.  ECF No. 115 at 20. Plaintiffs submitted several email communications between dairy employees, referencing money transfers between the various LLCs and Defendant DeCoster. ECF No. 116-1 at 56–65.  It is not clear from this evidence whether the LLCs were left undercapitalized, but the emails do support Plaintiffs' contentions of freely transferred assets, which also weighs in favor of applying the alter ego theory.

Finally, Plaintiffs maintain that Defendant DeCoster oversees the daily operations of the LLCs and retains the ultimate decision-making authority.  ECF No. 115 at 21.  For example, Defendant DeCoster stated he communicates with dairy managers over the phone regarding work that needs to be done at the dairies. ECF No. 116-1 at 9–10, at 14.  The individuals tasked with dairy oversight are not necessarily employed by the dairies but work for some sort of compensation to carry out the tasks that Defendant DeCoster asks of them.  ECF No. 116-1 at 8–9.

During his deposition, Defendant DeCoster maintained he did not tell the dairy managers how to run the operations but then conceded that at least one employee/manager did what Defendant DeCoster asked him to do. *Id* at 10. Additionally, Defendant DeCoster communicates and enters agreements with outside vendors on behalf of the dairies at issue. ECF No. 116-1 at 18–19, at 67. When asked why he was involved with the financial details of the dairies, Defendant DeCoster stated because "[i]t's my money." ECF No. 116-1 at 23.

Taking Plaintiff's allegations as true, Defendant DeCoster's broad oversight of the entities' financial operations, paired with management of routine daily activities of the dairies, indicates Defendant DeCoster exerts pervasive control over all levels of the ownership scheme, which weighs in favor of applying the alter ego theory.

In *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, (E.D. Wash. 2015), this Court found similar facts sufficient to establish ownership liability, even where the owners held themselves out as passive owners, just as Defendant DeCoster does here. *Id*. at 1228–30 (finding an "abject failure to respect the corporate divisions when managing the Dairy's operations necessarily results in all three [business] forms being held responsible"). Although that matter was decided on summary judgment after significant discovery had been completed and the evidentiary recorded was fully developed,

1   the Court finds Plaintiffs here have alleged sufficient facts from which the Court

2   can reasonably infer the LLC ownership scheme is a mere instrumentality of

3   Defendant DeCoster.

4        Plaintiffs have met their burden in establishing a prima facie case that the

5   LLCs operate as Defendant DeCoster's alter ego.  By imputing the contacts of the

6   local dairy LLCs (DBD and SMD), the Non-Washington Defendants have

7   sufficient contacts with Washington State to satisfy the first prong of specific

8   personal jurisdiction.  The parties do not dispute the remaining elements of the

9   specific personal jurisdiction analysis.  Therefore, the Court finds it has specific

10  personal jurisdiction over Non-Washington Defendants.

11  **II.    Motion to Dismiss—Failure to State a Claim**

12       Defendants Washington Agri Investments, LLC, Washington Dairy

13  Holdings, LLC, along with Non-Washington Defendants, move to dismiss

14  Plaintiffs' First Amended Complaint on the grounds that Plaintiffs have failed to

15  allege these defendants have contributed to the violations of the RCRA.  ECF Nos.

16  111 at 5; 112 at 12.

17       A motion to dismiss for failure to state a claim "tests the legal sufficiency"

18  of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To

19  withstand dismissal, a complaint must contain "enough facts to state a claim to

20  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.  While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

When analyzing whether a claim has been stated, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."  *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" however "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

1   In assessing whether Rule 8(a)(2) has been satisfied, a court must first

2   identify the elements of the plaintiff's claim(s) and then determine whether those

3   elements could be proven on the facts pled.  The court may disregard allegations

4   that are contradicted by matters properly subject to judicial notice or by exhibit.

5   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court

6   may also disregard conclusory allegations and arguments which are not supported

7   by reasonable deductions and inferences.  *Id*.

8   The Court "does not require detailed factual allegations, but it demands

9   more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*,

10  556 U.S. at 662.  "To survive a motion to dismiss, a complaint must contain

11  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

12  on its face.'"  *Id*. at 678 (citation omitted).  A claim may be dismissed only if "it

13  appears beyond doubt that the plaintiff can prove no set of facts in support of his

14  claim which would entitle him to relief."  *Navarro*, 250 F.3d at 732.

15  **A.  Defendant Liability**

16  A private party may bring suit under RCRA "against any person . . .

17  including any past or present generator, past or present transporter, or past or

18  present owner or operator of a treatment, storage, or disposal facility, who has

19  contributed or who is contributing to the past or present handling, storage,

20  treatment, transportation, or disposal of any solid or hazardous waste which may

1    present any imminent and substantial endangerment to health or the environment."

2    42 U.S.C. § 6972(a)(1)(B) (emphasis added).  Defendants are "persons" within the

3    meaning of the statute.  See 42 U.S.C. § 6903(15).  "[T]o state a claim predicated

4    on RCRA liability for 'contributing to' the disposal of hazardous [or solid] waste, a

5    plaintiff must allege that the defendant had a measure of control over the waste at

6    the time of its disposal or was otherwise actively involved in the waste disposal

7    process." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011).  A

8    plaintiff is not required to allege the defendant was the ultimate decision-maker

9    concerning waste disposal.  *Id*. at 852–53 (collecting cases); *see also Cmty. Ass'n*

10    *for Restoration of the Env't, Inc. v. Cow Palace*, LLC, 80 F. Supp. 3d 1180, 1229

11    (E.D. Wash. 2015).

12        Here, Plaintiffs have alleged a common ownership scheme through which

13    Defendant DeCoster carries out financial transactions and general management of

14    the dairies.  Plaintiffs allege Defendant DeCoster specifically uses Washington

15    Dairy Holdings, LLC and Washington Agri-Investments, LLC to direct the manure

16    operations at the dairies.  To illustrate, Defendant Washington Dairy Holdings,

17    LLC owns and operates a facility that houses heifers for both the DBD and SMD

18    dairies.  ECF No. 102 at 21, ¶ 60.  Defendant Washington Agri-Investments, LLC

19    owns land around the DBD dairy, and DBD uses that land to discard solid waste

20    generated by both the DBD and SMD dairies.  *Id*. at ¶ 61.  Further, the DBD and

1   SMD dairies operate as a single CAFO under the ultimate control of Defendant

2   DeCoster and the LLC ownership scheme.  *Id.* at ¶ 63.  These allegations, in

3   conjunction with Defendant DeCoster's use of the LLC ownership scheme as his

4   instrumentality for carrying out other dairy business, are sufficient for the Court to

5   infer that Non-Washington Defendants and Defendants Washington Agri-

6   Investments, LLC and Washington Dairy Holdings, LLC had a "measure of

7   control" over the manure application and storage.

8           Of course, these defendants are still permitted to assert as a defense that they

9   did not retain ultimate control over the manure operations, and may present

10  evidence at summary judgment or trial demonstrating any decisions regarding the

11  manure storage and disposal were made exclusively by those tasked with oversight

12  at the SMD and DBD dairies.  At the dismissal stage, however, the Court construes

13  the alleged material facts as true, and in a light most favorable to Plaintiffs.  Thus,

14  the Court finds Plaintiffs have alleged facts that could plausibly lead to the relief

15  Plaintiffs seek.

16  **III.    Motion to Dismiss—Subject Matter Jurisdiction**

17          Defendants DBD Washington, LLC, SMD, LLC, Washington Dairy

18  Holdings, LLC, and Washington Agri Investments, LLC move for dismissal on the

19  grounds that Plaintiffs failed to provide the required pre-suit notice to bring an

20

1    "open dumping" claim, and thus, the Court lacks subject matter jurisdiction.  ECF

2    No. 110 at 4.

3          Motions to dismiss for lack of subject matter jurisdiction are governed by

4    Federal Rule of Civil Procedure 12(b)(1).  A court's jurisdiction may be challenged

5    based on the face of the pleadings or in a factual attack, which disputes the truth of

6    the allegations in the pleading.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

7    2004).  In a facial attack, such as the one here, the party challenging jurisdiction

8    must assert the allegations contained in the complaint are insufficient on their face

9    to invoke federal jurisdiction.  *Id*.  The court must accept as true all facts pleaded

10   in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Id*.

11         In an action alleging RCRA violations, a prospective plaintiff must provide

12   notice to the alleged violator before commencing the action.  42 U.S.C. § 6972(a).

13   The RCRA requires 60 days' notice for any violation of a "permit, standard,

14   regulation, condition, requirement, prohibition or order," and 90 days' notice for a

15   violator who has contributed to "past or present handling, storage, treatment,

16   transportation, or disposal of any soldi or hazardous waste which may present an

17   imminent and substantial endangerment to health or the environment."  *N.*

18   *California River Watch v. Honeywell Aerospace*, 830 F. Supp. 2d 760, 765 (N.D.

19   Cal. 2011) (quoting 42 U.S.C. § 6972).

20

1    The Ninth Circuit has explained the main purpose of the notice requirement

2  is to "give [the alleged violator] an opportunity to bring itself into compliance with

3  the Act and thus . . . render unnecessary a citizen's suit." *N. California River*

4  *Watch*, 830 F. Supp. 2d at 765 (quoting *Ctr. for Biological Diversity v. Marina*

5  *Point Dev. Co.,* 566 F.3d 794, 800 (9th Cir.2009)).  The notice must tell a target

6  what it allegedly did wrong and when, but the notice provisions require no more

7  than "reasonable specificity." *Id*. (quoting *S.F. Baykeeper, Inc., v. Tosco Corp.*,

8  309 F.3d 1153, 1158 (9th Cir. 2002)).  "Thus, prospective plaintiffs are not

9  required to provide every detail of the alleged violations, but they need to provide

10  enough information so that the nature, location, and dates of the wrongful conduct

11  can be ascertained and the conduct corrected." *Id*. at 766.

12    Defendants assert the notice was inadequate because Plaintiffs did not

13  identify in their letters the specific subsection of the statute under which they

14  intended to sue.  ECF No. 110 at 7–9.  Plaintiffs' notice letters to Defendants SMD

15  and DBD, which are incorporated by reference into the First Amended Complaint,

16  contain a header that specifically identifies 42 U.S.C. §6972(a)(1)(B).  *See, e.g.,*

17  ECF Nos. 102-1 at 3; 102-2 at 2.  The letters also contain a section captioned

18  "Violations of Resource Conservation and Recovery Act: Open Dumping." *See,*

19  *e.g.,* ECF Nos. 102-1 at 9; 102-2 at 8.  That section states Defendants' "past and

20  present waste disposal practices" caused nitrate contamination to travel beyond the

1   facility boundaries in violation of the RCRA.  *See, e.g.,* ECF No. 102-1 at 10.  The

2   letters also state Defendants' storage of liquid and solid manure in unlined earthen

3   lagoons or inadequately lined lagoons, and their composting and storage of manure

4   on bare land, caused manure to seep into the groundwater, contaminating the water

5   with nitrate above allowable levels.  *Id.*  Prior sections of the letters set forth in

6   detail the particular activities giving rise to the nitrate contamination and where the

7   contamination is occurring.  *See e.g.*, *id.* at 4–5.  The letters also state with

8   specificity the locations of the dairies at issue.  ECF Nos. 102-1 at 3; 102-2 at 3.

9         Defendants allege Plaintiffs' notice is inadequate because they did not

10  explicitly cite to 42 U.S.C. § 6972(a)(1)(A).  ECF No. 110 at 7.  However, other

11  courts have found notice sufficient, even where plaintiffs did not identify a

12  particular statute at all.  *N. California River Watc*h, 830 F. Supp. 2d at 767 (finding

13  notice sufficient where a plaintiff merely alleged the defendant was "guilty of open

14  dumping, as that term is used in the RCRA").  Plaintiffs here have provided more

15  than adequate notice of their intent to sue under § 6972(a)(1)(A).  They captioned a

16  section of their letter "open dumping," then provided detailed descriptions of the

17  alleged violations, and listed the addresses where the violations were occurring.

18  Notably, Plaintiffs concluded their letters by indicating their intent to bring suit

19  pursuant to 42 U.S.C. § 6972(a).  Thus, Defendants were provided enough

20  information to give them the opportunity to bring the manure operations into

compliance or face litigation under the "open dumping" statutes. The Court finds Plaintiffs' letters provided sufficient notice. Consequently, this Court has subject matter jurisdiction over the "open dumping" claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs Motion to Unseal (ECF No. 117) is **GRANTED in part** as to ECF No. 115.

2. The Clerk of the Court shall unseal ECF No. 115.

3. Plaintiffs' Motion to Expedite (ECF No. 119) is **DENIED as moot**.

4. Washington Defendants' Motion to Dismiss (ECF No. 110) is **DENIED**.

5. Defendants Washington Agri-Investments, LLC and Washington Dairy Holdings, LLC's Motion to Dismiss (ECF No. 111) is **DENIED**.

6. Defendants DeCoster, DeCoster Enterprises, LLC, Agricultural Investment Fund, LLC, Idaho Dairy Holdings, LLC, and Dry Creek Diaries, LLC's Motion to Dismiss (ECF No. 112) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED February 7, 2022.



THOMAS O. RICE
United States District Judge