1  Charles M. Tebbutt, WSBA #47255
   Jonathan D. Frohnmayer, *pro hac vice*
2  Law Offices of Charles M. Tebbutt, P.C.
   3026 NW Esplanade
3  Seattle, WA 98117
   (541) 285-3717
4
   *Additional Counsel Identified on Signature Page*
5
                IN THE UNITED STATES DISTRICT COURT
6              FOR THE EASTERN DISTRICT OF WASHINGTON

7  COMMUNITY ASSOCIATION FOR          Case No. 1:19-CV-3110-TOR
   RESTORATION OF THE
8  ENVIRONMENT, INC., a Washington
   Non-Profit Corporation; FRIENDS OF
9  TOPPENISH CREEK, a Washington Non-   PLAINTIFFS' MOTION FOR AWARD
   Profit Corporation,                  OF ATTORNEYS' AND EXPERT
                                        WITNESSES' FEES AND COSTS
10          *and*

11 CENTER FOR FOOD SAFETY, INC., a
   Washington D.C. Non-Profit Corporation,
12          Plaintiffs,
                 *v.*
13
14 AUSTIN JACK DECOSTER, an individual,
   DECOSTER ENTERPRISES, LLC, a
15 Delaware limited liability company,
   AGRICULTURAL INVESTMENT-FUND
16 II, a Delaware limited liability company,
   IDAHO AGRI  INVESTMENTS, LLC, an
17 Idaho limited liability company, IDAHO
   DAIRY HOLDINGS, LLC, and Idaho
18 limited liability company, DRY CREEK
   DAIRIES, LLC, an Idaho limited liability
19 company, WASHINGTON DAIRY
   HOLDINGS, LLC, a Washington limited
20 liability company; WASHINGTON AGRI

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT                    1
WITNESSES' FEES AND COSTS

1    INVESTMENTS, LLC, a Washington
     limited liability company; DBD
2    WASHINGTON, LLC, a Washington
     limited liability company; *and* SMD, LLC, a
3    Washington limited liability company,

4              Defendants.

5

6

7         Community Association for Restoration of the Environment, Inc. ("CARE"),

8    Friends of Toppenish Creek ("Friends"), and Center for Food Safety, Inc. ("CFS"

9    and, together with CARE and Friends, "Plaintiffs"), respectfully request an award

10   of reasonable attorneys' and expert witnesses' fees and costs. This Motion is

11   brought under the Resource Conservation and Recovery Act's ("RCRA") statutory

12   fee-shifting provision, 42 U.SC. § 6972(e), the relevant provision in the Consent

13   Decree, *see* ECF No. 181 ¶ 54, and the parties' agreement regarding the timing and

14   schedule of fee motion practice. Declaration of Charles M. Tebbutt ("Tebbutt

     Decl.") ¶ 51.
15
          As the Court knows, this citizen suit held an industrial animal operation
16
     accountable for dangerous environmental contamination under RCRA, following
17
     the Court's seminal decision in *CARE v. Cow Palace*. *See Cmty. Ass'n for*
18
     *Restoration of the Env't v. Cow Palace, Ltd. Liab. Co*., 80 F. Supp. 3d 1180, 1186
19
     (E.D. Wash. 2015)*.* As a result of Plaintiffs' counsel's work, Defendants will not
20

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT                    2
WITNESSES' FEES AND COSTS

1  only end the waste mismanagement practices that contribute to dangerous nitrate

2  and ammonium contamination of the groundwater, they will—in close concert with

3  Plaintiffs—also undertake a novel remediation investigation and pilot program to

4  eliminate the existing contamination. *See* ECF No. 181 ¶¶ 22-24. That

5  investigation is already underway, with the Washington Department of Ecology

6  signaling its approval on August 14, 2023. Tebbutt Decl. ¶ 43. If successful, the

7  remediation investigation and pilot program will serve as a model for eliminating

8  nitrate and ammonium contamination from CAFOs and other industrial polluters

9  across the country.

10      Having earlier paid $100,000 in interim fees, Defendants agreed in the

11  Consent Decree to pay an additional interim amount of $250,000 in fees, which is

12  a fraction of those incurred by Plaintiffs. The parties stipulated that Plaintiffs are

13  the prevailing parties, and the Court entered judgment in Plaintiffs' favor. ECF No.

14  181, ¶ 54; ECF No. 182. Defendants refused the offer of remaining fees made

15  consistent with the Consent Decree, ECF No. 181, ¶ 54, and thus the only dispute

16  before the Court is the remaining amount of fees and costs to which Plaintiffs are

17  reasonably entitled.

18      Plaintiffs request that their attorneys be compensated at reasonable hourly

19  rates that account for the expertise necessary to handle this complex environmental

20

litigation. They also request full compensation for the time reasonably expended in this matter, much of which was necessitated by Defendants' litigation tactics.

In light of the excellent results achieved in this groundbreaking case, Plaintiffs respectfully request a compensatory attorneys' fee award of $1,427,565 (or higher if out of forum rates are awarded) and $303,923 in costs, including expert witnesses' fees, for a total award of **$1,731,488** (or higher), as set forth in **Appendix A** hereto. The $350,000 already paid to Plaintiffs will be deducted from the total award. ECF No. 181 ¶ 54.

**BACKGROUND**

As the Declaration of Charles M. Tebbutt explains, this case was contentious from the start and unusual as it progressed. It required significant motion practice, including briefing on motions to dismiss, discovery issues (including sanctions imposed on Defendants' conduct), and the unsealing of certain documents. Defendants' initial motion to dismiss was largely denied, with the exception of dismissal of two of the LLCs, both of which were later added back into the case. Tebbutt Decl. ¶ 18; *see* ECF No. 40 and ECF No. 134. The case was stayed four different times, *see* ECF Nos. 91, 93, 96, 142, with the stated intent that settlement could be reached—an intention that did not materialize until recently despite significant time and effort by Plaintiffs to reach settlement. The fits and starts of

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT WITNESSES' FEES AND COSTS

4

1  the settlement process resulted in seven amended Scheduling Orders, *see* ECF Nos.

2  72, 79, 85, 99, 105, 140, and 150.

3      Due to the extent and numerous sources of Defendants' dairies' pollution—

4  including from lagoon seepage, animal operations, composting operations, silage

5  processing, and overapplication of manure to fields—Plaintiffs had to undertake

6  voluminous discovery and extensive expert witness engagement. Plaintiffs' legal

7  team analyzed tens of thousands of pages of documents, conducted a detailed site

8  investigation pursuant to Rule 34 after an extensive discovery dispute, took seven

9  depositions with more planned, and produced hundreds of pages of expert reports.

10  Tebbutt Decl. ¶ 48; ECF No. 168. In addition, the novelty of the remediation

11  investigation and pilot program required significant further expert engagement, all

12  of which is ongoing and subject to separate funding provisions. Tebbutt Decl. ¶ 56.

13      In addition to this extensive scientific work, Plaintiffs also sifted through

14  substantial discovery related to the corporate documentation for a series of shell

15  LLCs that ultimately led to Defendant, Austin Jack DeCoster. Tebbutt Decl. ¶¶ 18,

16  22-23. While Defendants sought to dismiss a number of corporate entities from the

17  case, as well as Mr. DeCoster himself on personal jurisdiction grounds, the Court

18  ruled for Plaintiffs and kept all of them in the case. ECF No. 134 at 24. As the

19  Court noted, when asked why he was involved with the financial details of the

20

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

5

1  Dairies, Mr. DeCoster candidly admitted, "[i]t's my money." *Id*. at 15 (citing ECF
2  No. 116-1 at 23).

3       Throughout this litigation, Defendants' conduct consistently impeded
4  progress and required undue expenditures of time by Plaintiffs. As the Court
5  recognized, "Plaintiffs initiated this litigation in 2019 and Defendants have been
6  engaged in dilatory tactics since its inception." ECF No. 177 at 10. In particular,
7  Plaintiffs were forced to spend a significant number of hours in making *eleven*
8  separate written requests to Defendants, spanning nearly a year, for missing or
9  incomplete discovery items beginning on March 22, 2022, without ever receiving
10  even close to a full response. ECF No. 162 at 1-6. Defendants' failures to respond
11  prompted Plaintiffs' Motion to Compel Discovery Responses and Motion for
12  Sanctions, ECF No. 162, which the Court granted in part, awarding Plaintiff all
13  fees in connection with that motion. ECF No. 177 at 12. Because the Parties then
14  stayed the case again, Plaintiffs held the fee issue in abeyance until now. Plaintiffs
15  thoroughly investigated Defendants' spoliation of evidence and sought to remedy
16  some of those failures through obtaining phone and computer records, which
17  Defendants opposed. Tebbutt Decl. ¶¶ 22-23. Defendants also vigorously opposed
18  Plaintiffs' Rule 34 inspection. Tebbutt Decl. ¶¶ 26-27. The Court ultimately
19  intervened, ordering that Plaintiffs be able to proceed with that inspection in a
20  timely fashion. Tebbutt Decl. ¶ 27; ECF No. 61. In addition, the agreement for the

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                        6

1    third stay was reached upon Defendants' representation that they would be closing

2    the dairy operations and remediating the property. *See* ECF No. 95 at 2:11-3:10;

3    Tebbutt Decl. ¶ 29. Defendants since reneged on that promise and resumed dairy

4    operations. *Id.*

5           Plaintiffs' efforts were continuously complicated by Defendants' unusual

6    and frequent changing of law firms. Tebbutt Decl. ¶¶ 19-21. Throughout the

7    litigation, three different law firms – Marten Law LLP, Lynn Pinker Cox & Hurst,

8    and Sidley Austin LLP – came and went. *Id.* ¶ 18. The Defendants' principals

9    themselves also proved difficult to track down. John Glessner, who initially took

10   the role of manager and lead contact, disappeared from the case after his deposition

11   in December 2020, only to reappear in 2022 to insert himself as lead negotiator of

12   the terms of a potential settlement. Tebbutt Decl. ¶¶ 19, 22, 23, 30. Despite Mr.

13   Glessner's admission during deposition that neither his phone nor computer had

14   been searched for responsive records, Mr. Glessner refused to hand them over and

15   hired an Iowa law firm to fight providing those devices even to Defendants'

16   counsel. *Id.* ¶ 23. It remains unclear, and now moot, whether all devices were

17   properly searched.

18          Just two months before trial, the parties agreed to the Consent Decree, later

19   approved by the Court. ECF Nos. 178, 181.

20

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

1   While the history above addresses the larger aspects of this case, Plaintiffs

2   respectfully ask the Court award the lodestar requested based on the unusual

3   evolution of this case, the extraordinary results achieved, and the time

4   commitments undertaken to achieve these results.

5                              **LEGAL STANDARDS**

6   The Ninth Circuit endorses the "lodestar" method of calculating the

7   reasonableness of an award of attorneys' fees, which involves multiplying the

8   number of hours reasonably expended on the litigation by a reasonable hourly rate.

9   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). In examining

10  the number of hours expended, the Court should "defer to the winning lawyer's

11  professional judgment as to how much time he was required to spend on the

12  case[.]" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Only

13  those hours which the Court finds are "excessive, redundant, or otherwise

14  unnecessary" should be excluded. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98

15  1405 (9th Cir. 1992). In complex, protracted litigation such as the one at hand,

16  however, the Ninth Circuit recognizes that some amount of duplicative work is

17  unavoidable: "a lot of legal work product will grow stale," attorneys must "get up

18  to speed with the research previously performed," and some *necessary*

19  duplication" is "inherent in the process." *Moreno*, 534 F.3d at 1112.

20

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                        8

As to the reasonableness of counsel's hourly rates, courts in this circuit ordinarily examine the hourly rates charged for work performed by attorneys of comparable skill, experience, and reputation in the "relevant legal community." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). As discussed further below, the general rule is that the "relevant legal community" encompasses the forum in which the District Court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997), but outside forum rates may well be applied. *Id*.

**ARGUMENT**

**I.    PLAINTIFFS ARE THE PREVAILING PARTY.**

The Consent Decree states: "Plaintiffs shall be considered the prevailing party for purposes of settlement." ECF No. 181 ¶ 54. Accordingly, the typical prevailing party standards need not be addressed in this brief.

**II.   THE HOURS PLAINTIFFS EXPENDED ARE REASONABLE.**

Through September 10, 2023, for the reasons outlined in the declarations and the Background Section above, Plaintiffs' counsel incurred thousands of hours on this litigation, spanning over four years and containing 182 docket entries.[1] Paul

---

[1] In order to keep further fees and costs to a minimum, Plaintiffs propose that only one supplemental fee and cost bill be submitted within 30 days after the Court's decision on the present application. *See, e.g., Davis v. City & Cnty. of San*

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT WITNESSES' FEES AND COSTS

Kampmeier, an attorney specializing in complex environmental litigation with over 22 years' experience, reviewed Plaintiffs' attorneys' timesheets and determined that "all the hours billed are reasonable because they were incurred in reasonable efforts to win this case and not spent on obviously extraneous tasks." Declaration of Paul Kampmeier ¶ 27 ("Kampmeier Decl."). Mr. Kampmeier commends counsel for their able delegation of work, resulting in "very little duplicative time." *Id*. ¶ 27. Mr. Kampmeier also observes that "the attorneys' fees are what they are because of Defendants' conduct, not because Plaintiffs' counsel spent an unreasonable time on the case or on any individual tasks." *Id.* ¶ 30. Mr. Kampmeier notes that while Defendants did not need to "roll over," they could have acknowledged the risks that their lagoons and dairy practices were polluting drinking water and worked to devise solutions. *Id*. ¶ 30. Instead, they used shell companies to avoid identification, filed meritless motions to dismiss, and engaged in discovery practices that increased time and cost for all parties. *Id*.

Plaintiffs' counsel's contemporaneous time records are sufficiently detailed to establish their entitlement to compensation for all hours included in this request.

_____

*Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992), *opinion vac. in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) (time spent by counsel establishing right to fee award is compensable).

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT WITNESSES' FEES AND COSTS

10

1    Accordingly, Plaintiffs request that the Court find that the hours incurred by

2    Plaintiffs' litigation team are reasonable.

## III.   THE HOURLY RATES PLAINTIFFS REQUEST ARE REASONABLE.

As described above, courts in this circuit examine the hourly rates charged

for work performed by attorneys of comparable skill, experience, and reputation in

the "relevant legal community" when determining the reasonableness of hourly

rates. *Ingram*, 647 at 928. While the general rule is that the "relevant legal

community" encompasses the forum in which the District Court sits, *Barjon*, 132

F.3d at 500, rates outside the forum may be used "if local counsel was unavailable,

either because they are unwilling or unable to perform because they lack the degree

of experience, expertise, or specialization to handle the case properly." *Id*. (quoting

*Gates*, 987 F.2d at 1405).

For instance, in a RCRA enforcement action brought in New Jersey, the

Third Circuit determined that Washington, D.C. rates should be used, as there was

no willing counsel in New Jersey who would have accepted the representation.

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 706-07 (3d Cir. 2005).

Other courts have reached a similar conclusion. *See, e.g., Nat'l Wildlife Fed'n v.*

*Hanson*, 859 F.2d 313, 318 (4th Cir. 1988) (hourly rates based on Washington,

D.C. market where no attorneys in Raleigh, NC market were capable to take case);

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

11

1    *U.S. Pub. Interest Research Grp. v. Stolt Sea Farming, Inc.*, 301 F. Supp. 2d 46, 48

2    (D. Maine 2004) (no attorneys in forum capable of litigating dispute). This Court's

3    Voting Rights Act fee decision is in accord, finding that non-local forum rates are

4    appropriate when local counsel is unavailable within the forum. *Montes v. City of*

5    *Yakima*, 2:12-cv-3108-TOR, ECF No. 186 at 7-9 (June 19, 2015).

6         Plaintiffs show that no lawyers within the forum were capable or willing to

7    represent Plaintiffs in these actions, and that Plaintiffs' counsel, particularly

8    Charlie Tebbutt and Daniel Snyder, have particularized expertise that call for

9    application of national market rates. The fact that attorneys from Seattle, Portland,

10   Dallas and Washington, D.C., were all brought in by Defendants throughout the

11   case, provide further support for awarding non-local forum rates.

12        First, as described by Friends' Executive Director, Jean Mendoza, no other

13   counsel in Washington has been willing to represent Friends in this type of

14   litigation, let alone do so while taking the personal and financial risks that

15   Plaintiffs' counsel shouldered. Declaration of Jean Mendoza ("Mendoza Decl.") ¶¶

16   9.f, 11. Friends believes that "Tebbutt Law is one of the best, if not the best, when

17   it comes to environmental law." *Id.* ¶ 7.

18        Second, there are no local attorneys with the necessary expertise and

19   specialization in federal environmental law, including how such laws apply to

20   CAFOs, who could have or would have successfully represented Plaintiffs in this

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                                        12

lawsuit. *Id*. ¶ 11; Tebbutt Decl. ¶ 35. Mr. Tebbutt notes that he is not aware of any other firms in Washington that would take this or similar CAFO enforcement cases without his firm's expertise, and that no other such cases have been brough without his firm as lead counsel. Tebbutt Decl. ¶ 35. Co-counsel Toby J. Marshall also notes, "I am not aware of any law firms located in the Eastern District of Washington who have taken on, or would be willing to take on, environmental protection claims against CAFOs without working with Tebbutt Law." Declaration of Toby J. Marshall ("Marshall Decl.") ¶ 18. Moreover, there is only a small community of environmental litigators *nationwide* with expertise in CAFOs and the resources necessary to litigate cases of this magnitude and difficulty. Tebbutt Decl. ¶ 35. Because there is an absence of experienced CAFO litigators both in this forum and across the country, the "relevant legal community" for this type of work is the small national community of federal environmental litigators specializing in CAFO-related matters.

The Court considered similar arguments by Plaintiffs CARE and CFS in the *Cow Palace* fee award. *See Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, Ltd. Liab. Co.*, No. 13-CV-3016-TOR, 2016 U.S. Dist. LEXIS 92110, at *15-20. (E.D. Wash. Jan. 12, 2016). While this Court stated, with respect to lead counsel Charles Tebbutt, that it was a "close call" whether to apply a non-forum

1    rate, the Court ultimately declined to do so because it remained "too theoretical" to

2    say that no counsel within the Eastern District would take this case. *Id.* at *20.

3    　　　　Since that time, the undersigned attorneys, and in particular Messrs. Tebbutt,

4    Snyder, and Ms. van Saun, have been the only attorneys representing plaintiff

5    organizations in similar RCRA enforcement actions against other dairy CAFOs in

6    the Lower Yakima Valley. Tebbutt Decl. ¶ 35; *see, e.g., CARE v. Spring Canyon*

7    *Ranch; CARE v. Sunnyside Dairy*; *CARE v. View Point Dairy*; *see also Wash. State*

8    *Dairy Fed'n v. Dep't of Ecology*, 18 Wash. App. 2d 259, 490 P.3d 290 (2021)

9    (overturning State of Washington's General CAFO Permit issued pursuant to the

10   Federal Water Pollution Control Act for, *inter alia*, failing to protect groundwater

11   from CAFO pollution). Tebbutt Decl. ¶¶ 11-12. To Plaintiffs' knowledge, no other

12   counsel, whether within or outside this forum, has brought these types of cases in

13   Washington. *Id*. ¶ 35. Ms. van Saun also recognizes the unique expertise of

14   Messrs. Tebbutt and Snyder, stating, "Mr. Tebbutt and his staff, including Dan

15   Snyder, in my experience, are the most knowledgeable CAFO enforcement

16   attorneys in the country." Declaration of Amy van Saun ¶ 8.

17   　　　　Plaintiffs must also underscore that while local attorneys might be *willing* to

18   take the case (none have done so thus far, even after the precedent set in *Cow*

19   *Palace*), their competence to prosecute and get anything near the groundbreaking

20   result here, is purely theoretical. As Ms. Mendoza notes, "[t]o make a comparison

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                             14

1    to the medical world, we would not hire a general practitioner to perform brain

2    surgery." Mendoza Decl. ¶ 7. Thus, while a non-forum rate may have been a "close

3    call" nearly seven years ago in *Cow Palace*, Plaintiffs submit that the Court has

4    ample reason to find a different result now, including Tebbutt's national reputation

5    and case experience. Kampmeier Decl. ¶¶ 15-16; Tebbutt Decl. ¶ 4.

6         In addition to those considerations, Mr. Kampmeier reviewed the hourly

7    rates requested by Plaintiffs, and concluded that they are "commensurate with the

8    hourly rates of other attorneys representing plaintiffs in environmental litigation in

9    the U.S. District Court for the Eastern District of Washington." Kampmeier Decl. ¶

10   26.  Moreover, with regard to Mr. Tebbutt in particular, Mr. Kampmeier noted that

11   an hourly rate of $640 is "quite reasonable," and that beyond that rate, "Mr.

12   Tebbutt could seek national rates instead of forum rates given the nature and scope

13   of his practice and his professional expertise." *Id*. ¶ 18. Accordingly, the rates

14   Plaintiffs seek, whether forum or out-of-forum, are reasonable hourly rates this

15   Court should use in calculating the lodestar. *United Steelworkers of America v.*

16   *Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (affidavits from plaintiff's

17   attorney and other attorney regarding prevailing fees in relevant legal community

18   are satisfactory evidence of prevailing market rate).

19        The specific rates, total hours, and total amount of fees and costs sought by

20   Plaintiffs' attorneys are summarized and appended hereto as **Appendix A**. Details

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

15

are provided in the respective firm declarations, and a full explanation of each

column is in Mr. Tebbutt's Declaration. Tebbutt Decl. ¶ 13. The rates requested are

based principally on the USAO Attorney's Fees Matrix, which this Court utilized

in *Red Lion Hotels Franchising, Inc. v. Century-Omaha Land, LLC.* Case No.

2:18-CV-0131-TOR, 2019 U.S. Dist. LEXIS 26152, at *9 (E.D. Wash. Feb. 19,

2019). In light of their national experience, and for the reasons set out herein, the

rates for Messrs. Tebbutt and Snyder are either at the top locality-adjusted rates for

attorneys of their experience or the unadjusted rates, while the other attorneys'

rates are below the top locality-adjusted rates. Tebbutt Decl. ¶ 13g. Courts in this

district have recently approved rates similar to those sought by Plaintiffs' counsel

here. *See, e.g.*, Marshall Decl., Ex. 2 (orders in *Carranza v. Dovex Fruit Co.* and

*Valencia v. HomeDeliveryLink, Inc.* approving Mr. Marshall's rate of $525 per

hour).

Plaintiffs also point the Court to the adjusted *Laffey* Matrix, a guideline

originally designed for the Washington, D.C. legal market to which some courts in

this circuit have referred in evaluating the reasonableness of hourly rates,

especially where there are attorneys of varying levels of experience involved in the

litigation. *See, e.g., San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S.

Dist. LEXIS 138093, at *20, 2011 WL 6012936 (N.D. Cal. 2011); *Reed v. Purcell,*

2011 U.S. Dist. LEXIS 126321, at *13-14, 2011 WL 5128142 (D. Ariz. 2011);

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

16

1  *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948

2  (N.D. Cal. 2010). Those rates are shown in Column I of the attorneys' fees table in

3  **Appendix A**. For an attorney with 20+ years of experience beginning June 1,

4  2023, the *Laffey* Matrix yields an hourly rate of $1057. The hourly rates requested

5  by all Plaintiffs' counsel are thus *significantly* lower than those recommended by

6  the adjusted *Laffey* Matrix. The Court is, however, also invited to consider using

7  the *Laffey* fee rate for Messrs. Tebbutt and Snyder, as described in Mr. Tebbutt's

8  declaration. Tebbutt Decl. ¶ 13f.

9          Additionally, the Ninth Circuit has articulated a number of factors to be used

10 as guidance by district courts in determining the reasonableness of hourly rates

11 requested by attorneys. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.

12 1975). The *Kerr* factors further support the hourly rates sought by Plaintiffs. *Id.*;

13 *Chalmers v. Los Angeles*, 796 F.2d 1205, 1212 (1986) (*Kerr* factors "are largely

14 subsumed within the initial calculation of reasonable hours expended at a

15 reasonably hourly rate[.]"); *Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9

16 (9th Cir. 1996) (factors 1-4 and 6 are subsumed in lodestar calculation). Many

17 courts have awarded higher hourly rates based on the *Kerr* factors. *See, e.g., Earth*

18 *Island Inst. v. S. Cal. Edison Co.*, 838 F. Supp. 458, 466-67 (S.D. Cal. 1993)

19 (awarding "premium" hourly rate based on the excellent representation provided

20 by counsel); *Nance v. Jewell*, 2014 U.S. Dist. LEXIS 32195, *8-10, 2014 WL

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

17

948844 (D. Mont. 2014) (awarding $500/hour for Billings attorney on basis that, *inter alia*, lawyer's skill, experience, and reputation was deserving of such an award); *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1082 (D. Idaho 2014) (while couched in terms of multiplier, court determined that counsel's quality representation was deserving of higher hourly rate).

Here, *Kerr* factors 1-4 and 6, the most relevant of the twelve and those subsumed in the lodestar calculation, support the rates sought by Plaintiffs:

*Factor One: The time and labor required.* As described above, the complex legal and factual—including scientific—issues, and novel approach to remediation, required the expenditure of significant hours by Plaintiffs, as did response to Defendants' dilatory tactics and attorney revolving door. The time and labor involved is therefore deserving of the rates sought herein.

*Factor Two: The novelty and difficulty of the questions involved.* RCRA imminent and substantial endangerment claims against industrialized dairy CAFOs remain novel, time-consuming, and difficult to prove. Across the country, there are only a handful of similar cases, and most of that handful involve the undersigned attorneys. Moreover, litigation of this case involved substantial difficulty, in large part due to Defendants' tactics and the involvement of numerous corporate entities. This factor further supports Plaintiffs' proposed rates.

*Factor Three:* *The skills requisite to perform the legal service properly.* Plaintiffs' declarations describe the very limited community of attorneys specializing in enforcement of environmental laws against CAFOs. Kampmeier Decl. ¶ 14; Tebbutt Decl. ¶ 35; Marshall Decl. ¶ 18; Mendoza Decl. ¶¶ 9f, 11. Lead counsel also has a specialized national practice. Tebbutt Decl. ¶ 4; Snyder Decl. ¶¶ 7, 9, 10. Defendants brought in multiple, big city out-of-forum counsel. Tebbutt Decl. ¶ 20. Because specialized skill and experience was required to render the legal services in these cases, the hourly rates sought are reasonable.

*Factor Four:* *The preclusion of other employment by the attorney due to acceptance of the case.* Plaintiffs' lead counsel devoted substantial working hours to this case over the past four years. Mr. Tebbutt's declaration describes how his firm turned down other potential cases because of the intensity of this case. Tebbutt Decl. ¶ 33.

*Factor Six:* *The contingent nature of the fee.* Plaintiffs' counsel litigated these matters on a contingent basis. Tebbutt Decl. ¶ 35. This also weighs in favor of the rates sought by Plaintiffs, which will compensate counsel for the risk involved throughout this representation. Kampmeier Decl. ¶¶ 9, 17. Note that Plaintiffs do not ask the Court to "enhance" the lodestar based on the contingent nature of the arrangement, only that it be taken into account in establishing the lodestar. *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992).

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT WITNESSES' FEES AND COSTS

19

1    Outside of the *Kerr* factors, the Supreme Court has made clear that the

2    outcome or result of the lawsuit is one of the main factors to be considered in the

3    lodestar calculation. *Blum v. Stenson*, 465 U.S. 886, 900 (1984). Here, according to

4    Mr. Kampmeier, Plaintiffs obtained "extraordinary" relief that will "force

5    Defendants to do everything possible to control any pollution from the facilities."

6    Kampmeier Decl. ¶ 32. This case, along with other similar cases, have been

7    discussed by a number of media outlets and legal publications. Tebbutt Decl. ¶¶

8    15, 44. Plaintiffs obtained relief that will positively affect hundreds, if not

9    thousands, of individuals living in the Lower Yakima Valley, and the remedial

10    investigation and pilot programs could serve as a model in remediating pollution

11    from thousands of other facilities across the country. Thus, the excellent results

12    achieved in these cases further support the rates sought by Plaintiffs. *Hensley v*

13    *Eckerhart*, 461 U.S. 424, 435 (1983) ("The result is what matters.").

14    **IV.    PLAINTIFFS' COSTS ARE REASONABLE.**

15    Plaintiffs seek an award of $56,234 in non-expert costs thus far incurred

16    (through September 10, 2023) litigating this action. These costs include, *inter alia*,

17    expert fees, laboratory fees, transcript fees, airfare, car rental, lodging, meals, long

18    distance telephone charges, research charges, copying charges, and other expenses

19    directly related to the lawsuits. Tebbutt Decl. ¶ 50. Plaintiffs strove to minimize

20    their compensable costs over the past years. Examples of frugality are provided. *Id*.

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                                        20

1  The costs also include $13,924 for Mr. Kampmeier's time in advising on this

2  petition. Kampmeier Decl. ¶ 38. The costs for which Plaintiffs seek compensation

3  are of the type that would normally be charged to a fee-paying client. *Trs. of the*

4  *Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d

5  1253, 1257 (9th Cir. 2006). The Court should therefore award Plaintiffs' their full

6  costs.

7  **V.   PLAINTIFFS' EXPERT WITNESSES' FEES AND COSTS ARE
       REASONABLE.**

8
9        As part of the overall costs, Plaintiffs seek an award of $247,689 for their

10  expert witnesses' fees and costs, contemplated by both the Consent Decree and 42

11  U.S.C. § 6972(e). Plaintiffs' primary experts, Dr. Nachman, Mr. Erickson, and Dr.

12  Russelle, were critical to the successful resolution of this case by diagnosing and

13  exposing the nature and extent of Defendants' pollution, as well as the urgency of

14  remediating it, as was evidenced during settlement discussions. Tebbutt Decl. ¶ 48.

15  These experts invested their time into, *inter alia*, reviewing and dissecting

16  thousands of pages of discovery; planning and executing Plaintiffs' Rule 34

17  inspection, which provided critical factual information about Defendants' Dairies;

18  synthesizing data into comprehensive expert reports; analyzing and responding to

19  Defendants' multiple expert reports (Defendants submitted three expert reports);

20  and aiding in settlement. Without these experts and their well-informed opinions,

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                          21

Plaintiffs would have been unable to successfully prosecute these cases to finality. In *Cow Palace*, this Court awarded full expert fees to CARE and CFS and stated that "Mr. Erickson [the one expert who provided services in both cases] provided critical sampling services and opinions regarding the contamination throughout the Defendants' facilities, especially contamination from the leaking lagoons." *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, Ltd. Liab. Co.*, No. 13-CV-3016-TOR, 2016 U.S. Dist. LEXIS 92110, at *60. (E.D. Wash. Jan. 12, 2016). And while the expert opinions did not ultimately reach the Court here, that fact was merely a consequence of their contributions to the strength of Plaintiffs' case and, consequently, Defendants' willingness to settle on terms favorable to protection of human health and the environment. As such, their fees should be compensated fully.

## CONCLUSION

Due to the precedential nature and excellent results achieved, Plaintiffs respectfully request that the Court grant their requested lodestar award of $1,427,565 (or higher if out-of-forum rates are awarded) in fees and $303,923 in costs for a total of **$1,731,488** (or higher) through September 10, 2023, from which award the $350,000 already paid by Defendants will be subtracted pursuant to the Consent Decree, ECF No. 181 ¶ 54, along with supplemental fees and costs to be submitted for "fees on fees."

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT WITNESSES' FEES AND COSTS

22

Respectfully submitted this 15th day of September, 2023.

/s/ Charles M. Tebbutt
Charles M. Tebbutt, WSBA #47255
Jonathan D. Frohnmayer, *pro hac vice*
Law Offices of Charles M. Tebbutt, P.C.
3026 NW Esplanade
Seattle, WA 98117
(541) 285-3717
charlie@tebbuttlaw.com
jon@tebbuttlaw.com

/s/ Daniel C. Snyder
Daniel C. Snyder, *pro hac vice*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Tel: (202) 861-5251
dsnyder@publicjustice.net

/s/ Andrea K. Rodgers
ANDREA K. RODGERS
WSBA #38683
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, WA 98117
andrearodgers42@gmail.com
Tel: (206) 696-2851

/s/ Toby J. Marshall
Toby J. Marshall, WSBA #32726
Blythe H. Chandler, WSBA #43387
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
tmarshall@terrellmarshall.com
bchandler@terrellmarshall.com
Tel: (206) 816-6603

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS

23

1

/s/ Amy van Saun
AMY VAN SAUN, *pro hac vice*
2   CENTER FOR FOOD SAFETY
303 Sacramento Street, 2nd Floor
3   San Francisco, CA 94111
avansaun@centerforfoodsafety.org
4   Tel: (415) 826-2770

5

*Counsel for Plaintiffs*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFFS' MOT. FOR AWARD OF ATTORNEYS' & EXPERT
WITNESSES' FEES AND COSTS                                    24

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I electronically filed the foregoing document, together Appendix A thereto, on the Court's CM/ECF filing system, which will automatically serve the following counsel of record:

Gary H. Baise                gbaise@ofwlaw.com
Jay Carroll                  jcarroll@hnw.law
Amy van Saun                 avansaun@centerforfoodsafety.org
Toby Marshall                tmarshall@terrellmarshall.com
Blythe H. Chandler           bchandler@terrellmarshall.com
Andrea K. Rodgers            andrearodgers42@gmail.com
Daniel C. Snyder             dsnyder@publicjustice.net


                             /s/ Jonathan D. Frohnmayer
                             Jonathan D. Frohnmayer
                             Law Offices of Charles M. Tebbutt

## Appendix A - Fees and Costs

| Table 1. Fees | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Attorney | Firm | Years Exp. | USAO Rate 2020-21 | USAO Rate 2023-24 | USAO Rate 2023-24 (Locality Adjusted) | Rate Requested | Alt. Rate Requested (National | *Laffey* Rate 2023-24 | Hours | Total Due |
| Charles M. Tebbutt | LOCMT | 35 | $665 | $735 | $640 | **$640** | **$735** | $1,057 | 794.7 | $508,608 |
| Daniel C. Snyder | LOCMT/PJ | 13 | $532 | $588 | $512 | **$512** | **$588** | $878 | 586.6 | $300,339 |
| Jon Frohnmayer | LOCMT | 10 | $452 | $499 | $435 | **$425** | | $777 | 367.0 | $155,975 |
| Parker Jones | LOCMT | 4 | $380 | $420 | $366 | **$330** | | $437 | 1,034.3 | $341,319 |
| Andrea Rodgers | LOAKR | 21 | $621 | $686 | $598 | **$590** | | $1,057 | 12.5 | $7,375 |
| Amy van Saun | CFS | 12 | $532 | $588 | $512 | **$490** | | $878 | 16.6 | $8,134 |
| Jenny Loda | CFS | 11 | $532 | $588 | $512 | **$480** | | $878 | 43.7 | $20,976 |
| Amanda Steiner | TM | 25 | $621 | $686 | $598 | **$590** | | $1,057 | 112.0 | $66,080 |
| Toby Marshall | TM | 21 | $621 | $686 | $598 | **$590** | | $1,057 | 5.8 | $3,422 |
| Blythe Chandler | TM | 13 | $532 | $588 | $512 | **$512** | | $878 | 5.3 | $2,714 |
| Eden B. Nordby | TM | 2 | $333 | $368 | $321 | **$280** | | $437 | 19.4 | $5,432 |
| **Subtotal** | | | | | | | | | **2,997.9** | **$1,420,374** |
| Paralegal/Secretary | Firm | Years Exp. | | | | Rate Requested | | *Laffey* Rate 2023-24 | Hours | Total Due |
| Bradford Kinsey | TM | 20+ | | | | **$125** | | | 2.7 | $338 |
| Jessica A. Langsted | TM | 6 | | | | **$150** | | $239 | 15.3 | $2,295 |
| Lisa Reed | PJ | 20+ | | | | **$195** | | $239 | 14.3 | $2,789 |
| Marisela Taylor | LOCMT | 20+ | | | | **$150** | | | 11.8 | $1,770 |
| **Subtotal** | | | | | | | | | **44.1** | **$7,191** |
| **Total - Fees** | | | | | | | | | **3,042.0** | **$1,427,565** |

## Appendix A - Fees and Costs (Cont.)

| Table 2. Costs | |
|---|---|
| **Expert Witness** | **Total Cost** |
| Dave Erickson/WET | $221,789 |
| Michael Russelle | $22,300 |
| Keeve Nachman | $3,600 |
| **Subtotal** | **$247,689** |
| **Litigation: Court/service, Postage, Printing, PACER, Research, etc. & Consulting** | **Total Cost** |
| Law Offices of CMT | $26,494 |
| Terrell Marshall | $15,816 |
| Paul Kampmeier | $13,924 |
| **Subtotal** | **$56,234** |
| **Total - Costs** | **$303,923** |

| Table 3. Grand Total | |
|---|---|
| **Total Fees and Costs Award** | **$1,731,488** |
| Amount Paid Previously | $350,000 |
| **Remainder Due** | **$1,381,488** |